# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| DAWN BRENNER and KATHY BRENNER, as co–trustees for the heirs and next of kin of Dylan Brenner, | Case No. 18-CV-2383 (NEB/ECW) |
| Plaintiffs, | ORDER ON MOTION TO DISMISS AND MOTION TO AMEND |
| v. | |
| DANIELLE SUE ASFELD, WES GRAVES, AMANDA NOWELL, CHRISTINA LEONARD, JOHN DOES 1–2, in their individual capacities, SHERBURNE COUNTY, and MEND CORRECTIONAL CARE, PLLC, | |
| Defendants. | |

Dylan Brenner died by suicide in 2017 while in custody at the Sherburne County Jail. The trustees of Brenner's estate assert federal and state claims against Sherburne County, MEnD Correctional Care, PLLC, and their employees. Defendants Wes Graves and Sherburne County brought a motion to dismiss, arguing that the complaint fails to plead facts to show specific knowledge that Brenner was a suicide risk. In response, Plaintiffs seek leave to file a second amended complaint to bolster their existing claims and to add new defendants and claims. For the reasons that follow, the Court grants the motion to amend in part and denies the motion to dismiss at moot.

# BACKGROUND

*First Amended Complaint*

The First Amended Complaint alleges the following facts:[1]

Though Brenner's suicide occurred in 2017, Brenner was first incarcerated at the Sherburne County Jail in July and August 2016. During his 2016 stay, MEnD Correctional Care, PLLC provided him with medical care. [ECF No. 6 ("Am. Compl.") ¶¶ 19–20.] Both Sherburne County and MEnD records show that Brenner was on suicide watch during the entirety of his 2016 stay. (*Id.* ¶ 22.) Brenner suffered from severe physical and mental health issues—including traumatic brain injury, bipolar disorder, and PTSD—following three combat tours of duty in Iraq. (*Id.* ¶¶ 14–15, 18.) Sherburne County and MEnD records document Brenner's mental health history and prescribed medications. (*Id.* ¶ 21.)

On October 6, 2017, following a guilty verdict in the same criminal matter that led to his 2016 incarceration, Brenner was taken into custody and again booked into the Sherburne County Jail. (*Id.* ¶ 24.) The seriousness of the guilty verdict combined with Brenner's mental health history, including known suicidality at Sherburne County, placed him at high risk for suicide. (*Id.* ¶ 25.) Despite knowing this risk, Defendants failed to conduct adequate mental-health screenings, failed to assess the risk properly, and placed Brenner in the general population. (*Id.* ¶¶ 26–27.)

---

[1] The First Amended Complaint ("Amended Complaint") filed on October 31, 2018 [ECF No. 6] is currently the operative complaint.

The Amended Complaint contains specific allegations about each defendant. As to Defendant and MEnD nurse Christina Leonard, who treated Brenner on the evening of October 6, Plaintiffs assert that Leonard diagnosed Brenner with drug withdrawal, and that she knew doctors had prescribed Brenner medical marijuana for his PTSD and suicidal thoughts. (*Id.* ¶¶ 30–31.) Plaintiffs assert that Leonard failed to ensure that MEnD and Sherburne County properly screened or monitored Brenner, and thus Sherburne County placed him in the general population, where he received 30-minute well-being checks rather than closer medical monitoring. (*Id.* ¶¶ 32–33.)

As to Defendant and MEnD nurse Danielle Sue Asfeld, who met with Brenner's mother Kathy Brenner on the morning of October 7, Plaintiffs assert that Kathy Brenner gave Asfeld several of Brenner's medications, including medical cannabis, venlafaxine HCL, lamotrigine, cyproheptadine, lurasidone, and trazodone. (*Id.* ¶ 34.) Asfeld knew Brenner had current and valid prescriptions for the various medications, and that the medications were for treatment of serious mental health conditions, including PTSD, depression, anxiety, and bipolar disorder. (*Id.* ¶¶ 36–42.) Asfeld had access to Brenner's medical records, knew of his history of suicidal ideations, knew he was suffering from drug withdrawal, and knew he had not received his medications since his incarceration. (*Id.* ¶ 25.) Despite this knowledge, Asfeld did not provide him with his medication, assess the status of his mental health condition, or inventory or chart the prescriptions. (*Id.* ¶¶

3

43–46.) Plaintiffs assert that as a result, Brenner received 30–minute well–being checks rather than more frequent monitoring. (*Id.* ¶ 47.)

As to Defendant and MEnD nurse Amanda Nowell, who inventoried Brenner's medications, Plaintiffs assert she similarly had access to Brenner's file, and knew of his health history and medications, but did not provide him any medicine, assess his mental health status, or chart his prescriptions. (*Id.* ¶¶ 50–56.) As a result, Plaintiffs assert, Brenner received 30–minute well–being checks rather than more frequent monitoring. (*Id.* ¶ 57.)

As to Sherburne County, Plaintiffs allege that Sherburne County staff, including corrections officer Wes Graves, failed to conduct the 30–minute well–being checks properly, missing multiple checks in violation of implemented policies and procedures. (*Id.* ¶¶ 7, 58–59.) For example, Graves did not conduct a well–being check at 1:59 p.m., and the last proper observation of Brenner occurred no later than 1:05 p.m. (*Id.* ¶¶ 60–61.) Brenner was found unresponsive at 2:19 p.m., and his time of death was 2:23 p.m. (*Id.* ¶¶ 62–63.) Plaintiffs assert that had Brenner received proper medical attention, closer monitoring, and his medications, he would likely not have died of suicide. (*Id.* ¶¶ 68–70.)

*Second Amended Complaint*

After reviewing Graves' and Sherburne County's answer and motion to dismiss, Plaintiffs conducted more investigation, and now seek leave to file a second amended complaint ("SAC"), adding new allegations about Brenner's placement in administrative

security segregation, his several prescriptions, and Defendants' alleged failures to provide adequate care despite their knowledge of Brenner's history. [*See generally,* ECF No. 34–2, Ex. B ("Second Am. Compl.").] Plaintiffs assert that these added facts bolster their existing § 1983 and negligence claims. The proposed SAC alleges that during his 2016 stay in Sherburne County, Brenner was on "Max-Gown" status because he was a suicide risk. Under "Max-Gown" status, Brenner wore a Kevlar suicide prevention gown, received only a Kevlar blanket and finger food, and was under special mental health watch every fifteen minutes. (*Id.* ¶¶ 46-49.)

According to the SAC, Brenner remained on this "Max-Gown" status and in administrative maximum security segregation until his August 1, 2016 transfer to the Wright County Jail. (*Id.* ¶¶ 67-71.) An Inmate Transfer Form denoted that Brenner "was presently on a 30-minute special watch, and that [he] was in maximum security administrative segregation '[d]ue to his assaultive history, comments made at arrival, and MH issues.'" (*Id.* ¶ 80.)

Along with these new detailed allegations about Brenner's status and suicide watch in 2016, the SAC asserts, in more detail, the written requirement that he remain in administration maximum security. (*Id.* ¶¶ 86–212.) It also adds deliberate indifference allegations against Dr. Todd Leonard, the sole member of MEnD and the medical director/supervisor at the Sherburne County Jail, and three corrections officers at Sherburne County—Rebecca Lucar, Denny Russell, and James Rourke. (*Id.* ¶¶ 6-11.) The

SAC also adds allegations about Defendants' history of deliberate indifference to other inmates. (*Id.* ¶¶ 226–41.)

The initial complaint alleged the following legal claims:

- § 1983 Deliberate Indifference against Asfeld, Nowell, Leonard, John Does 1–2;

- Wrongful death/Professional negligence against Asfeld, Nowell, Leonard, MEnD, Sherburne County, and John Does 1–2; and

- Wrongful death/Negligence against Graves, John Does 1–2[2], and Sherburne County.

The SAC adds the following claims and defendants:

- § 1983 Supervisory Liability against Dr.Leonard;

- § 1983 *Monell* Liability against MEnD, Dr. Leonard, and Sherburne County;

- § 1983 Deliberate Indifference against Wes Graves, Rebecca Lucar, Denny Russell, James Rourke, and Dr. Leonard; and

- Wrongful death/Negligence against Lucar, Russell, and Rourke.

All existing and proposed Defendants oppose the Motion to Amend. Defendants first argue prejudice as to the entire SAC, or, in the alternative, for the Court to strike portions of the SAC under Rule 12(f). The existing and proposed Defendants then argue

---

[2] The SAC removes John Does 1–2 from the claims.

futility on various grounds, including that the SAC does not meet the *Iqbal*/*Twombly* plausibility standard and that Defendants are entitled to immunity.

Separately, Graves and Sherburne County (the "Sherburne Defendants") have brought a Motion to Dismiss the operative First Amended Complaint.

## ANALYSIS

### I.     MOTION TO AMEND

When a party seeks an amendment other than as a matter of course, a party may amend its pleading only with the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a). Rule 15(a) is a lenient standard, and a "good cause" showing is required only after the expiration of the applicable deadline in the scheduling order. *See Hebert v. Winona Cty.*, No. CV 15-469 (RHK/JJK), 2016 WL 7888036, at *1 (D. Minn. Apr. 7, 2016). Rule 15(a) favors granting leave because this litigation is in its early stages, as only a limited pretrial schedule has been set and the motion to amend deadline has not passed. [*See* ECF No. 48 ("Pretrial Scheduling Ord.").]

There is no absolute right to amend, though, and a "court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the non–moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (citations and quotation marks omitted). Here, there is no claim of undue delay, bad faith, dilatory

motive, or repeated failure to cure pleading deficiencies. Defendants instead assert that the Court should deny the amendment because it will prejudice Defendants and is futile. The Court addresses each argument below.

## II.    PREJUDICE

MEnD Correctional Care, PLLC, Danielle Sue Asfeld, Amanda Nowell, and Christina Leonard (the "MEnD Defendants") argue that because they do not dispute the sufficiency of the operative complaint, "[i]n asserting 195 new allegations, Plaintiffs are imposing significant defense and discovery burdens upon the MEnD Defendants without a correlating benefit or relationship to this case." [ECF No. 46 ("MEnD Defs' Opp. To Leave") at 10.] They contend the new allegations will unduly burden discovery without a good-faith basis to do so. Plaintiffs argue that the new allegations are relevant because the new facts go to establish important issues like actual knowledge and foreseeability.

"Any prejudice to the nonmovant must be weighed against the prejudice to the moving party by not allowing the amendment." *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). Here, allowing the proposed SAC will not unduly prejudice the MEnD Defendants. Unlike *Bell*, allowing leave to file the SAC would not require the parties to reopen discovery or extend discovery or motion deadlines. *See id.* Thus, the Court cannot find prejudice.

**Fed. R. Civ. P. 12(f).** The MEnD Defendants further argue that, at minimum, the Court should strike claims that are redundant, immaterial, impertinent, or scandalous.

*See* Fed. R. Civ. P. 12(f); *Med. Graphics Corp. v. Hartford Fire Ins. Co.,* 171 F.R.D. 254, 257 (D. Minn. 1997) (citing *Fed. Deposit Ins. Corp. v. Coble,* 720 F. Supp. 748, 750 (E.D.Mo.1989) (noting that standards for granting motion to strike and motion for leave to amend "collapse into an inquiry as to the legal sufficiency of the proposed amendment")). The MEnd Defendants first argue that the Court should strike "scandalous" allegations about Dr. Leonard's prior reprimand and other lawsuits against MEnD. "Material is scandalous if it generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *McLafferty v. Safeco Ins. Co. of Indiana,* No. CIV. 14-564 DSD/SER, 2014 WL 2009086, at *3 (D. Minn. May 16, 2014). The MEnD Defendants contend that Plaintiffs include allegations about Dr. Leonard's prior reprimand by the Minnesota Board of Medical Practice not for relevance, but to cast Dr. Leonard in a derogatory light "by castigating his 'moral character.'" (MEnD Defs' Opp. To Leave at 14.)

The Court is not persuaded that Plaintiffs seek to include facts about Dr. Leonard's prior reprimand solely to disparage his reputation. Rather, the prior reprimand for Dr. Leonard's failure to provide appropriate medical care, especially surrounding the risk of suicide, may well have bearing on the claim of deliberate indifference. *See Stanbury Law Firm v. I.R.S.,* 221 F.3d 1059, 1063 (8th Cir. 2000) (declining to strike submissions that may not have been strictly relevant, but provided context and background to the suit); *McLafferty v. Safeco Ins. Co. of Indiana,* No. CIV. 14-564 DSD/SER, 2014 WL 2009086, at *3

(D. Minn. May 16, 2014) (citing *Haynes v. BIS Frucon Eng'g, Inc.*, No. 4:08-CV-701 CAS, 2008 WL 4561462, at *1 (E.D. Mo. Oct. 10, 2008) ("Matter will not be stricken unless it clearly can have no possible bearing on the subject matter of the litigation.")). The Court therefore declines to strike paragraphs 228 and 229 of the SAC. (*See* Second Am. Compl. ¶¶ 228–29.)

The SAC also references prior lawsuits against MEnD, and the MEnD Defendants argue that this material is scandalous because MEnD was not found liable of any wrongdoing in the actions listed. But by referencing other lawsuits, Plaintiffs are not asserting that the MEnD Defendants have been found liable of deliberate indifference in the past. Rather, Plaintiffs allege only the existence of other allegations that the MEnD Defendants acted with deliberate indifference. The Court declines to strike paragraph 237 of the SAC. (*See id.* ¶ 237.)

The MEnD Defendants also argue that because they "conceded [the first amended complaint's] sufficiency," the proposed amendments are superfluous. Defendants cite no law—and fail to convince the Court—that that leave to amend is appropriate only when defendants dispute the sufficiency of the claims.  Although lengthy, the SAC provides new factual context to support the claims and does not contain "largely incomprehensible factual allegations, discussions of case law supposedly supporting claims, and argumentative responses." *McAninch*, 491 F.3d at 766. In sum, the Court does not find the proposed SAC adds unnecessary detail or that defendants will be unduly prejudiced.

**Fed. R. Civ. P. 8(a)(2).** The MEnD Defendants further argue that the length of the proposed SAC runs afoul of the requirement for "a short and plain statement of the claim" under Fed. R. Civ. P. 8(a)(2). As discussed below, Plaintiffs assert viable claims and provide detailed and relevant factual assertions to support those claims. The proposed amendments do not amount to a "kitchen–sink" complaint. *See Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011). As Plaintiffs correctly note, the length of this complaint is not outside the scope for similar cases, including the *Lynas* case, which is 33 pages and 204 paragraphs. *See Lynas v. Stang*, Case No. 18-CV-02301 (case filed August 7, 2018 [ECF No. 1]). The proposed SAC does not violate Rule 8 of the Federal Rules of Civil Procedure.

## III.    FUTILITY[3]

Futility is a common basis for denying a proposed amendment. *Schlief v. Nu-Source, Inc.*, No. CV 10-4477 (DWF/SRN), 2011 WL 13140709, at *1 (D. Minn. Aug. 22, 2011). Amendment is futile where the proposed amended claim would not withstand a Rule 12(b)(6) motion to dismiss. *See ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*, 355 F. Supp. 3d 785, 793 (D. Minn. 2019) (citing *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010)). "To survive a motion to dismiss, a complaint must plead sufficient facts, accepted as true, to

---

[3] Under the parties' agreement at oral argument, the Court incorporates Graves' and Sherburne County's arguments advanced in its Motion to Dismiss with respect to John Does 1–2 to its analysis of Lucar, Russell, Graves, and Rourke. Likewise, the Court incorporates Graves' and Sherburne County's arguments advanced with respect to Graves to its analysis of Rourke.

state a claim to relief that is plausible on its face." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "Likewise, a proposed amended complaint that fails to state a plausible cause of action under the *Twombly* and *Iqbal* pleading standard will be denied as futile." *Id.* (citation omitted).

## A.    COUNT ONE: DELIBERATE INDIFFERENCE

A claim under § 1983 must allege that the conduct of a defendant, acting under color of state law, deprived a plaintiff of a constitutionally protected federal right. 42 U.S.C. § 1983. In Count One, Plaintiffs allege Eighth or Fourteenth Amendment violations under 42 U.S.C. § 1983, claiming Defendants[4] were deliberately indifferent towards Brenner's risk of suicide. The Sherburne Defendants argue this claim is futile, because (1) the SAC does not allege specific knowledge of Brenner's risk of suicide and (2) they are protected by qualified immunity.

### 1.    Plaintiffs have sufficiently pled Defendants acted deliberately indifferent towards Brenner's risk of suicide.

Plaintiffs assert that they have plausibly alleged both that Brenner suffered from objectively serious medical needs and that each of the individual defendants knew of but deliberately disregarded those needs. "Prisoners have a clearly established constitutional right to be protected from the known risks of suicide and to have [their] serious medical needs attended to." *Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 860 (8th Cir. 2018)

---

[4] Plaintiffs assert the Deliberate Indifference claim against Asfeld, Nowell, Leonard, Dr. Leonard, Lucar, Russell, Graves, and Rourke, all in their individual capacities.

(citations and quotation marks omitted). Allegations that officials failed to prevent jail suicides in violation of § 1983 are treated as claims for failure to provide adequate medical treatment. *Drake ex rel. Cotton v. Koss,* 445 F.3d 1038, 1042 (8th Cir. 2006). "Deliberate indifference is the barometer by which such claims are tested." *Id.* The Eighth Amendment prohibits officials from acting with deliberate indifference towards the risk of suicide, and the Fourteenth Amendment extends this protection to pre–trial detainees. *Coleman v. Parkman,* 349 F.3d 534, 538 (8th Cir. 2003) (citations omitted).

Whether officials acted with deliberate indifference requires both an objective and subjective analysis. *Whitney,* 887 F.3d at 860 (citation and quotation marks omitted). The complaint must show that (1) the Sherburne County and MEnD employees had actual knowledge that Brenner had a substantial risk of suicide, and (2) they failed to take reasonable measures to abate that risk. *Id.* (citing *Coleman,* 349 F.3d at 538).

The Sherburne Defendants focus on the first prong of this test, arguing that the SAC pleads merely that the Defendants *should have known* Brenner was suicidal. Defendants assert that these "should have known" allegations do not pass muster because deliberate indifference requires actual knowledge. *See Whitney,* 887 F.3d at 860; *Hott v. Hennepin Cty., Minnesota,* 260 F.3d 901, 906 (8th Cir. 2001) (finding jail staff lacked actual knowledge of inmate's risk of self–harm because they did not have medical records from outside the prison that noted his suicidal tendencies, and the habit of making

strangling gestures, request to make a late–night phone call, and his "glum" demeanor did not put the prison on notice of the suicide risk).

In *Whitney*, the Eighth Circuit affirmed dismissal where the complaint made no allegation that the defendant had actual knowledge of an inmate's suicidal tendencies. *Whitney*, 887 F.3d at 860. The *Whitney* complaint incorporated a medical examiner's report that mentioned a medical practitioner knew the inmate was suicidal, but it failed to allege that the report was ever relayed to the defendant. *Id.* The Eighth Circuit found that the deliberate indifference claim was conclusory and thus dismissal was proper. *Id.* Plaintiffs' SAC here is different. Unlike the *Whitney* complaint, the proposed SAC makes specific allegations about Defendants' actual knowledge, including that they had access to and reviewed records establishing a history of suicidality. (*See* Second Am. Compl. ¶¶ 90–103, 108–14, 125–28, 132–34, 136–140, 142–44, 156–63, 172–78, 187–92, 194–99.) For example, the SAC alleges many of Defendants:[5]

> had access to and knew from MEnD and/or Sherburne County Jail administrative and medical records, at a minimum that: (a) [Brenner] had a history of PTSD; (b) that [Brenner] had a history of suicidality; (c) [Brenner] had previously been subjected to close suicide monitoring at the Sherburne County Jail despite having denied being suicidal; (d) [Brenner] left the Sherburne County Jail with a classification of administrative maximum segregation and on a 30–minute special mental health watch that had never been lifted; (e) that mental health professionals at the Sherburne County Jail, or within MEnD, were supposed to conduct a mental health follow-up and assessment with [Brenner] before the 30–minute special mental health watch classification could be removed, but had never done so; (f) that

---

[5] Plaintiffs allege that Defendants with this knowledge include Christina Leonard, Dr. Leonard, Denny Russell, Danielle Asfeld, and Amanda Nowell.

[Brenner] was receiving a number of psychiatric and other medications on a daily basis at the Sherburne County jail during his July/August detention; and (g) that a jury had found [Brenner] guilty of serious criminal felony charges on October 6, 2017, and that those were the same charges on which [Brenner] was previously booked and precipitated his prior suicidal behavior and subsequent suicidal watch.

(*Id*. ¶¶ 112, 126, 139, 163, 176.)

Not only are these allegations sufficiently detailed to plead a claim of actual knowledge, but "a mental state can be inferred [] from facts that demonstrate that a medical need was obvious and that the officer's response was 'obviously inadequate.'" *Barton v. Taber*, 820 F.3d 958, 965 (8th Cir. 2016) (citation omitted). The SAC includes detailed allegations about Defendants' knowledge of Brenner's mental health history, prescription medication regime, placement in maximum security, and recent guilty verdict. These facts plead actual knowledge sufficiently, and thus the deliberate indifference claim is not futile.[6]

## 2. Qualified immunity does not shield the Defendants from liability.

The Sherburne Defendants next argue that even if the claims are not futile for failure to plead actual knowledge, they are futile because qualified immunity applies.

---

[6] These facts relate to Defendants Lucar, Leonard, Dr. Leonard, Russell, Asfeld, and Nowell. As to Graves and Rourke, the SAC alleges that they knew inmates placed in administrative maximum security posed a higher risk of self–harm and that Brenner was specifically placed in segregation because he was deemed suicidal in 2016. (Second Am. Compl. ¶¶ 188–90, 197-99.) Because of this knowledge and that they both personally observed Brenner looking depressed, (*Id.* ¶¶ 192, 201), the SAC sufficiently pleads actual knowledge on part of Graves and Rourke.

Qualified immunity shields governmental officials performing discretionary functions from civil liability in § 1983 actions if their "conduct does not violate clearly established or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The district court determines qualified immunity, which is "immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citation omitted). Courts must address the following two factors when deciding claims of qualified immunity: (1) whether the facts alleged make out a violation of a constitutional right, and (2) whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Pearson*, 555 U.S. at 815–18. "Unless both of these questions are answered affirmatively, [a defendant] is entitled to qualified immunity." *Nord v. Walsh Cty.*, 757 F.3d 734, 738–39 (8th Cir. 2014). "And, courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'" *Id.* (quoting *Pearson*, 555 U.S. at 226).

The Court will first address the question of whether the SAC sufficiently alleges that the Sherburne Defendants violated Brenner's clearly established right. The only argument advanced by the Sherburne Defendants in this regard is the sufficiency of the factual allegations, which the Court has just addressed. The Sherburne Defendants make no argument that protection from the risk of suicide is not a clearly established constitutional right—such an argument would contravene direct Eighth Circuit

precedent under *Whitney*. 887 F.3d at 860. Thus, because the Court has found the allegations sufficient to establish a claim of deliberate indifference, the Court must also reject the Sherburne Defendant's arguments on qualified immunity. The SAC plausibly asserts violations of a clearly established right, so qualified immunity does not shield Plaintiffs at this stage.

## B.     COUNT TWO: SUPERVISORY LIABILITY

Plaintiffs seek to add a claim of supervisory liability against MEnD physician Todd Leonard, alleging he was deliberately indifferent to or authorized his subordinates' deliberate indifference to Brenner's serious medical needs. A supervisor may "be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996); *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) ("Supervisors, in addition to being liable for their own actions, are liable when their corrective inaction amounts to 'deliberate indifference' to or 'tacit authorization' of the violative practices.") (citation omitted). Supervisory liability under § 1983 attaches where the supervisor received notice of a pattern of unconstitutional acts committed by subordinates, showed deliberate indifference to or tacit authorization of the offensive acts, and failed to take sufficient remedial action, which proximately caused injury. *Andrews*, 98 F.3d at 1078. "A single incident, or a series of isolated incidents" is usually an insufficient basis to find supervisory liability. *Howard*,

887 F.2d at 138. To establish a failure to supervise and train, the complaint must show that "the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews*, 98 F.3d at 1078.

The proposed SAC alleges that beyond Dr. Leonard's personal deliberate indifference towards Brenner's risk of suicide, he also had notice that his subordinates engaged in a pattern of deliberate indifference, and that he failed to train and supervise employees to avoid jail suicides. (*See* Second Am. Compl. ¶¶ 121–35; 226-41.) Thus, when read in the light most favorable to the Plaintiffs, the SAC alleges sufficient facts at this stage to support a supervisory liability claim, and the Court finds it is not futile.

### C.     COUNT THREE: *MONELL* LIABILITY

The proposed SAC alleges a *Monell* claim against Sherburne County, MEnD, and Dr. Leonard (in his official capacity) for their alleged custom of deliberate indifference relating to the well–being of inmates at high risk of self-harm. As to MEnD and Dr. Leonard (as a MEnD final policymaker), Plaintiffs allege deliberate indifference relating to the supervision of lower–level MEnD employees. As to Sherburne County, Plaintiffs allege deliberate indifference relating to well–being checks and the decision to contract with MEnD despite knowing MEnD provides deficient medical care.

Under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Municipalities may, however, be liable under

42 U.S.C. § 1983 if they "subject[] a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Id.* at 59 (citation and quotations omitted). A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct so pervasive among non-policymaking employees of the municipality "as to constitute a 'custom or usage' with the force of law." *Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (citation omitted).

Typically, *Monell* claims are against governmental entities, such as Sherburne County, but courts have held that medical providers contracting with a jail may also be held liable if a plaintiff "identif[ies] a [ ] 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. a 694). Thus, both Sherburne County and MEnD can be held liable under *Monell*.[7] *See Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997) ("[T]he *Monell* policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of

---

[7] Because Plaintiffs add Dr. Leonard to the SAC's *Monell* claim in his official capacity, the claim is against MEnD and not Dr. Leonard individually. *See Monell*, 436 U.S. at 691 n.55 ("Since official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent…); *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) ("In at least three recent cases arising under § 1983, we have plainly implied that a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond. We now make that point explicit.")

medical care to inmates."). *Monell* liability attaches: (1) where a particular policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Moyle v. Anderson*, 571 F.3d 814, 817–18 (8th Cir. 2009).

Here, Plaintiffs allege a custom of deliberate indifference, even though the "custom" has not "received formal approval through the government's official decision-making channels." *Monell*, 436 U.S. at 691. To establish the existence of an unconstitutional custom, a plaintiff must show:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.*, proof that the custom was the moving force behind the constitutional violation.

*Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (citation omitted).

To highlight Defendants' alleged pattern of deliberate indifference, the proposed SAC alleges that MEnD's model of providing low–cost care leads to inadequate medical and mental health services. (Second Am. Compl. ¶¶ 230–36.) The Court agrees that MEnD's cost–efficiency, by itself, "does not suggest an unconstitutional policy or practice." *Moore v. MEnD Corr. Care*, No. CV 15-2848 (WMW/BRT), 2017 WL 8947189, at *4 (D. Minn. Feb. 28, 2017), report and recommendation adopted, No. 15-CV-2848 (WMW/BRT), 2017 WL 2709721 (D. Minn. June 23, 2017). But Plaintiffs do not merely

allege that cost savings equal deliberate indifference. Rather, Plaintiffs allege a pattern of inadequate care and indifference towards inmates' well–being, including other instances where inmates have committed suicide as a result of Defendants' deliberate indifference. For example, the SAC references:

> the 2010 suicide of Josh Holscher and the November 2017 suicide of James C. Lynas, which occurred at the Sherburne County Jail approximately one month after [Brenner's] suicide. In 2016, MEnD paid $850,000 to resolve claims of deliberate indifference against MEnD and Dr. Leonard for the 2010 suicide of Kyle Allan Baxter-Jensen…. Many more inmates have inflicted serious self-harm as a result of MEnD's deliberate indifference

(Second Am. Compl. ¶ 237.) The SAC further alleges that compliance inspections found that nurses discontinued suicide watches without proper authorization, and that well–being checks were completed too fast. (*Id.* ¶¶ 238–39.) Plaintiffs allege that Sherburne County's deliberate indifference towards suicide watches and welfare checks caused Brenner's and Lynas' suicides. (*Id.* ¶ 240.)

Defendants argue that Plaintiffs inappropriately rely upon these three instances, because Defendants either dispute liability or are not a party to the case. They also argue that a few isolated instances are not enough to give rise to *Monell* liability. The Court acknowledges liability has not been established in the other referenced cases and Defendants are correct that a few instances of misconduct do not prove an unconstitutional custom. *Andrews v. Fowler*, 98 F.3d at 1076 (finding two instances of misconduct did not "indicate a 'persistent and widespread' pattern of misconduct that amounts to a city custom or policy of overlooking police misconduct"). But at this stage,

Plaintiffs need not prove the facts that *establish* a *Monell* claim—only that such a claim is plausible. *Iqbal*, 556 U.S. at 678. "When a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right" and because of the liberty of the pleading standard "the failure … to specifically plead the existence of an unconstitutional policy or custom, in itself, is not fatal to their claim for relief." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). Because this case is only at the pleading stage, Plaintiffs need only raise facts to show the existence of an unconstitutional custom. *See Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 867 (D. Minn. 2015) ("Even if a plaintiff cannot identify the full scope of an alleged custom or policy, the key to surviving dismissal is that the complaint must allege facts which would support the existence of an unconstitutional policy or custom.") (citation and quotation marks omitted). The SAC sufficiently sets forth multiple instances of alleged deliberate indifference towards the risk of self-harm, and identifies a plausible custom under *Monell*. The *Monell* claim is thus not futile.

### D.    COUNT 4: PROFESSIONAL NEGLIGENCE

The proposed SAC seeks to add Dr. Leonard to its wrongful death/professional negligence claim against MEnD and its employees (Asfeld, Nowell, and Leonard) and

Sherburne County.[8] MEnD and its employees do not dispute the viability of this wrongful death claim and Sherburne County has not advanced arguments that it is not either directly or vicariously liable under this claim. (MEnD Defs' Opp. To Leave at 16 ("… because the MEnD Defendants did not challenge Plaintiffs' initial complaint, it would be disingenuous for the MEnD Defendants to argue the current amendment, as regards [sic] those claims, fails Rule 12(b)(6)").)

The Court finds this claim is not futile because the SAC adequately alleges professional negligence. Plaintiffs plead facts sufficient to establish that Defendants breached a standard of care causing damages. (*See* Second Am. Compl. ¶¶ 107–35, 156–84, 214-23); *Tousignant v. St. Louis Cty.*, 615 N.W.2d 53, 59 (Minn. 2000). Nor do Defendants argue that they are immune from this claim. *See Terwilliger v. Hennepin Cty.*, 561 N.W.2d 909, 913 (Minn. 1997) (declining to extend official immunity to employees of a county medical facility for medical malpractice). Finally, because Sherburne County owed a nondelegable duty to provide its inmates with medical care, vicarious liability is adequately pled. *See West v. Atkins*, 487 U.S. 42, 56, (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate

---

[8] The First Amended Complaint asserted a wrongful death/professional negligence claim against Asfeld, Nowell, Leonard, MEnD, Sherburne County, and John Does 1–2. (Am. Compl. at 11.) The SAC adds only another defendant— Dr. Leonard— and does not add new allegations to the wrongful death/professional negligence claim.

medical treatment to those in its custody…"); *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) ("defendants have a nondelegable duty to provide medical care when needed").

### E.     COUNT 5: NEGLIGENCE

In their proposed SAC, Plaintiffs allege a wrongful death/negligence claim against Sherburne County, Graves, Lucar, Russell, and Rourke.[9] The Sherburne Defendants argue that this claim is futile because the complaint fails to plead sufficient facts establishing it was reasonably foreseeable Brenner would commit suicide, and they are entitled to official immunity for their discretionary acts.

#### 1.     Plaintiffs have sufficiently pled facts to establish foreseeability.

To allege negligence, Plaintiffs must plead: (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of the duty being the proximate cause of the injury. *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn. 2001) (citation omitted). "A plaintiff who alleges negligence in a wrongful-death action must prove that (1) the defendant had a duty, (2) the defendant breached that duty, (3) there was a death, and (4) the breach of duty caused the death." *Stuedemann v. Nose*, 713 N.W.2d 79, 83 (Minn. Ct. App. 2006) (citation omitted). Each of the Sherburne Defendants owed Brenner a duty to prevent his suicide under the jailer–detainee relationship. *See Sandborg v. Blue*

---

[9] The proposed SAC adds new defendants Lucar, Russell, and Rourke to the existing wrongful death/negligence claim against Sherburne County and Graves. It also adds allegations that the risk of suicide is particularly true for inmates placed in administrative maximum security, and Defendants breached certain ministerial duties. (Second Am. Compl. ¶¶ 293–95.)

*Earth Cty.*, 615 N.W.2d 61, 64 (Minn. 2000) ("The jailer-detainee relationship is an exceptional circumstance in which the duty to protect against a known possibility of self-inflicted harm transfers entirely to the jailer…") The jailer–detainee relationship does not impose strict liability on the Sherburne Defendants. *Id*. at 65. Rather, the duty is to use reasonable care to prevent an individual from committing suicide, if a reasonably prudent person under the circumstances should have anticipated a suicide attempt. *Id.* The question is thus one of reasonable foreseeability.

The Sherburne Defendants argue that Plaintiffs fail to plead facts showing that they should have known Brenner was suicidal. They assert that although Brenner's previous suicidal ideations in 2016 were documented, the time gap is too attenuated to support foreseeability, and knowing of his felony conviction and PTSD does not support an inference that Brenner was suicidal. The Sherburne Defendants provide numerous examples of jail-suicide cases dismissed for a lack of foreseeability. Yet these examples were decided at the summary judgment stage or later. *See, e.g., Johnson v. City of Detroit*, 579 N.W.2d 895, 902 (Mich. 1998) (affirming summary judgment); *McNemar v. Dep't of Pub. Health*, 761 N.E.2d 551 (Mass. App. Ct. 2002) (reversing directed verdict). And while foreseeability can be "properly decided by the court prior to submitting the case to a jury," *Cooney v. Hooks*, 535 N.W.2d 609, 612 (Minn. 1995), at this stage, the Court need not decide whether Brenner's suicide was in fact foreseeable. *See Rau v. Roberts*, No. CIV.08-2451(RHK/JJK), 2009 WL 150954, at *3, n.3 (D. Minn. Jan. 21, 2009) (rejecting foreseeability

argument at motion to dismiss stage where defendant relied upon summary judgment authority); *Wendt v. Charter Commc'ns*, LLC, No. CV 13-1308 (RHK/TNL), 2013 WL 12221823, at *1 (D. Minn. Sept. 4, 2013) (denying a motion to dismiss because "foreseeability presents an evidentiary burden, not a pleading one"). Rather, the question is whether Plaintiffs pled enough facts to make a plausible showing that Brenner's risk of suicide was foreseeable. *See Twombly*, 550 U.S. at 555–56.

Under the motion to dismiss standard, the Court finds the proposed SAC plausibly alleges Brenner's death by suicide was foreseeable and thus the claim is not futile. For example, Plaintiffs allege that Lucar and Russell knew of Brenner's mental health history and that he previously left Sherburne County Jail as a suicide risk, requiring him to remain in maximum security until he was assessed by an administrator. (Second Am. Compl. ¶¶ 88–103, 136-45.) Lucar described the policy of returning Brenner to maximum security: "Um, at the end of our conversation, I, we both exited the interview room and I walked him down to the BH–5 and explained to him that this status was gonna be maximum until he was reviewed on Monday with Admin." (*Id.* ¶ 97.) Graves and Rourke knew that those placed in administrative maximum security, and specifically Brenner, pose a higher risk of self–harm, and the basis for Brenner's segregation was to protect against his risk of self–harm. (*Id.* ¶¶ 187–89, 195–98); *see Hott* 260 F.3d at 909 (reversing a grant of summary judgment because there was enough evidence that a correctional officer breached the duty to conduct well–being checks when suicidality was known and

the plaintiff had a right to present evidence of whether that breach proximately caused an inmate's death by suicide). These specific allegations about each Sherburne Defendant make Plaintiffs' claim that Brenner's risk of suicide was foreseeable plausible.

## 2. The Sherburne Defendants are entitled to official immunity for their discretionary acts.

The Sherburne Defendants assert that they are entitled to official immunity under Minnesota law and are thus immune from the negligence claim. "Official immunity protects public officials from the fear of personal liability that might deter independent action." *Drake ex rel. Cotton v. Koss*, 393 F. Supp. 2d 756, 765 (D. Minn. 2005), *aff'd*, 445 F.3d 1038 (8th Cir. 2006) (citing *Janklow v. Minn. Bd. of Examiners for Nursing Home Adm'rs*, 552 N.W.2d 711, 715 (Minn. 1996)). "Official immunity applies when the official's conduct involves the exercise of judgment or discretion, but it does not protect ministerial acts or malicious conduct." *Id.* Thus, whether official immunity is available depends on "(1) whether the alleged acts are discretionary or ministerial; and (2) whether the alleged acts, even though of the type covered by official immunity, were malicious or willful and therefore stripped of the immunity's protection." *Dokman v. Cty. of Hennepin*, 637 N.W.2d 286, 296 (Minn. Ct. App. 2001).

Plaintiffs allege that Sherburne Defendants were negligent in carrying out their "ministerial duties, including: (a) failing to maintain [Brenner] on the required 30–minute special mental health checks; (b) failing to maintain [Brenner] in a cell where he was not appropriate monitored for suicidality; and (c) failing to conduct appropriate well-being

checks." (Second Am. Compl. ¶ 294.) A duty is ministerial if it is "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 656 (Minn. 2004) (citation and quotation marks omitted). By contrast, a discretionary act requires using individual judgment in carrying out the official's duties. *Fedke v. City of Chaska*, 685 N.W.2d 725, 729 (Minn. Ct. App. 2004). More specifically, "[a] discretionary act involves individual professional judgment, reflecting the professional goal and factors of a situation." *Huttner v. State*, 637 N.W.2d 278, 284 (Minn. Ct. App. 2001).

Lucar is a Sherburne County classification officer who completed Brenner's intake interview on October 6, 2017. (Second Am. Compl. ¶ 88.) As part of her review, she knew of Brenner's serious medical needs, risk of self–harm, and the requirement that he be placed in administrative maximum security segregation pending a segregation review by a Sherburne County administrator. (*Id*. ¶ 91.) Lucar knew that when Brenner left Sherburne County Jail in 2017 he was subject to 30–minute mental health checks. (*Id*. ¶¶ 93–94.) Because of this knowledge and her review of his history, Lucar placed Brenner back into maximum security, subject to the 30–minute mental health checks. (*Id*. ¶¶ 96–97, 99.) Yet Lucar did not initiate any further medical evaluation or ensure Brenner was receiving the 30–minute mental health checks. (*Id*. ¶ 104.)

Lucar argues that the failure to identify Brenner as a suicide risk and implement suicide prevention procedures does not amount to negligence because the decision to

classify Brenner as suicidal was discretionary. [ECF No. 44 at 17 (citing *Koss*, 445 F.3d at 1043 (concluding that the decision not to assign a suicidal classification to the inmate was protected by official immunity).] The Court agrees that Lucar's actions were discretionary and she is therefore immune from the negligence claim. As the complaint reads, Lucar's failure to "initiate additional medical evaluation" or ensure Brenner "was receiving the previously ordered 30–minute special mental health checks" were discretionary decisions. The SAC fails to allege any plausible facts demonstrating that Lucar's duties were ministerial. Although the SAC alleges she failed to ensure the 30–minute special mental health checks were being conducted, it does not allege that she was required to ensure Brenner was being appropriately monitored once she classified him as requiring maximum security. Further, the SAC does not allege any willful or malicious conduct on Lucar's part. *See Elwood v. Rice Cty.*, 423 N.W.2d 671, 679 (Minn. 1988) Accordingly, the negligence claim against Lucar is futile because official immunity protects her discretionary actions.

As to Defendant Russell, a Sherburne County correctional officer who completed a medical screening of Brenner, Russell had access and was required to review the medical and administrative records related to Brenner's current and prior detentions at Sherburne County. (Second Am. Compl. ¶ 138.) From a record review, Russell knew of Brenner's health status and medications and prior incarceration history, yet he never requested that a medical professional review Brenner's status. (*Id.* ¶¶ 145–46.) Russell is

not an administrator, and thus the SAC alleges he did not have, and he knew he did not have, authority to end the 30–minute mental health watch or move Brenner from administrative maximum security. (*Id.* ¶¶ 147–48.) Because Russell moved Brenner to a different cell, Brenner received less monitoring than he should have. (*Id.* ¶¶ 149–50, 152.)

Like Lucar, the SAC fails to plausibly allege that Russell's actions were ministerial. While the SAC alleges Russell did not have authority to end the 30–minute mental health watch or move Brenner to a different cell, there are no facts indicating a ministerial duty to keep Brenner in the same conditions until an administrator conducted a review. To the contrary, the SAC demonstrates Russell exercised his judgment when recommending Brenner be placed with the general population. Likewise, there are no allegations that Russell's conduct was willful or malicious. *See Elwood,* 423 N.W.2d at 679. Accordingly, the negligence claim against Russell is futile because official immunity protects his discretionary actions.

As to Defendants Graves and Rourke, Plaintiffs assert they breached their ministerial duty in failing to conduct the 30–minute well–being checks in accordance with the policy that "all inmates are [to be] personally observed by a custody staff person at least once every 30 minutes" and "[t]hirty-minute checks should be staggered." Minn. R. 2911.5000, subp. 5. The Court finds Plaintiffs have pled a set of facts making it plausible that Graves and Rourke are not entitled to official immunity because their duty to conduct the 30-minute checks was ministerial. *See Hott,* 260 F.3d at 909; *see also, e.g.,*

*Thomas v. Cty. Comm'rs of Shawnee Cty.*, 262 P.3d 336, 355 (2011) (finding the duty to conduct 15–minute checks was ministerial). As the SAC reads, the well–being checks did not require Graves and Rourke to exercise their judgment and they had no autonomy to choose not to do the checks. Rather, DOC and Sherburne County Jail policies required the well–checks be completed in a particular manner, which Graves and Rourke failed to do. (*See* Second Am. Compl. ¶¶ 203–12.) Because the duty to conduct the checks was plausibly ministerial, Graves and Rourke are not entitled to official immunity at this stage.

The last Defendant, Sherburne County, is entitled to vicarious official immunity only with respect to its employees' discretionary actions. "[V]icarious official immunity protects the government entity from suit based on the official immunity of its employee." *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn. 1998). It would be anomalous to impose liability on Sherburne County for the very same acts for which the Sherburne employees received immunity. *See id.* Therefore, Sherburne County is entitled to vicarious official immunity for Lucar and Russell's actions. But, because official immunity does not shield Graves and Rourke, vicarious official immunity does not apply to Sherburne County with respect to the well–being checks.

## IV.  MOTION TO DISMISS IS MOOT

As discussed and agreed to by the parties at oral argument, the Court has considered and incorporated the arguments advanced in support of the Sherburne Defendants' motion to dismiss in its analysis of the motion to amend. Because the Court has reached a conclusion considering futility, the motion to dismiss is moot. *See Arcaro v. City of Anoka*, No. CV 13-2772 (JNE/LIB), 2014 WL 12605451, at *3 (D. Minn. July 16, 2014) (discussing that "[a] motion to dismiss a complaint and a motion to amend that same complaint are often related in that the motion to amend may effectively render the motion to dismiss moot," which is "especially true when the party opposing the motion to amend does so on the basis of an alleged futility of the amendments, because to reach a conclusion of futility, a court determines that the amended complaint could not withstand a motion to dismiss") (citing *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 511 (8th Cir. 2012) and *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002)).

**CONCLUSION**

Based on the foregoing and on all the files, records, and proceedings herein, the

Motion to Dismiss [ECF No. 20] is DENIED as moot and Motion to Amend [ECF No. 31]

is GRANTED in part. Accordingly, IT IS HEREBY ORDERED THAT:

1. Plaintiffs are granted leave to file the Second Amended Complaint;

2. The Second Amended Complaint shall not include a negligence claim

   against Rebecca Lucar and Denny Russell.

Dated: June 4, 2019                                          BY THE COURT:

                                                             s/Nancy E. Brasel
                                                             Nancy E. Brasel
                                                             United States District Judge